**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No: 23-CR-278 (TSC)** |
| v. | : | |
| | : | **40 U.S.C. § 5104(e)(2)(G)** |
| **MARK NEALY,** | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Mark Nealy, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to

certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7.  Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

***Defendant's Participation in the January 6, 2021, Capitol Riot***

8.  Defendant was present in Washington, D.C., and inside the U.S. Capitol building on January 6, 2021. He traveled to Washington DC that morning via bus from Chambersburg, PA. On that day, Defendant wore a dark gray beanie, dark colored sleeveless vest, light colored hoodie, dark colored neck gator, jeans, dark colored boots, and a 3 colored backpack orange, white, and dark gray or blue in color.

9.  As seem om CCTV videos, defendant entered the U.S. Capitol building through the Senate Wing Door at approximately 2:25 p.m. The windows had been broken, the door had been forced open, and people were entering the U.S. Capitol building through the door and windows; an alarm was sounding continuously as defendant and others entered the building. After entering, defendant turned right and walked down the corridor towards the U.S. Capitol Crypt East. Defendant them moved to the first floor Crypt Lobby East, having left the Crypt East area.

Defendant exited the U.S. Capitol building at the direction of law enforcement through the Senate Wing door at approximately 2:38 p.m. after having been inside the building for approximately 13 minutes.

10. On April 28, 2022, agents conducted an in-person interview with Defendant at his residence in Shippensburg, PA. During the interview, Defendant stated that he did enter the Capitol from what Defendant believed to be the back side mezzanine level near scaffolding. Upon entering the building, he went to the right and entered a room with statues along the wall. After using the bathroom, he exited the building.

### *Elements of the Offense*

11. The parties agree that 18 U.S.C. §5104(e)(2)(G) requires the following elements:
    a. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.
    b. Second, the defendant acted willfully and knowingly.

### *Defendant's Acknowledgements*

12. Defendant willfully and knowingly entered the U.S. Capitol Building knowing that he did not have permission to do so. Defendant further admits that while inside the Capitol, defendant willfully and knowingly paraded, demonstrated, or picketed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *(signature)*
Joseph Huynh
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Mark Nealy, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8/15/23

_____
Mark Nealy
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/15/23

_____
Craig E. Kauzlarich
Attorney for Defendant