**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-278 (TSC)** |
| **v.** | : | |
| | : | |
| **MARK NEALY,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Mark Nealy to 14 days of incarceration and, consistent with the plea agreement in this case, $500 in restitution.

**I.      Introduction**

Defendant Mark Nealy, who is 52 years old and the owner of a fencing business, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] The plea agreement in this case states that as of October 14, 2022, the riot caused approximately $2,881,360.20 in damage to the United States Capitol. As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain

Nealy pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings). The government's recommendation is supported by Nealy's entry into the Capitol through the Senate Wing Door shortly after it was initially breached, amid signs of the violent breach that were still fresh and obvious.  The Court must also consider that Nealy's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Nealy's crime support a sentence of 14 days of incarceration and $500 in restitution.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* DE 14.

### Defendant Nealy's Role in the January 6, 2021 Attack on the Capitol

Nealy traveled from Pennsylvania to Washington, D.C. on the morning of January 6, 2021, on one of the bus trips arranged by Pennsylvania Senator Doug Mastriano to attend the rally at the U.S. Capitol. After attending the rally, Neal walked to the U.S Capitol.  There, he saw people trying to break windows while on the scaffolding outside the Capitol building and a woman with a megaphone urging people to get close to the Capitol.

---

costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

CCTV captured Nealy inside the U.S. Capitol building on January 6, 2021. In the videos, Nealy can be seen with his face exposed, wearing a dark gray beanie, dark-colored sleeveless vest, light-colored hoodie, dark-colored neck gaiter, jeans, dark-colored boots, and a tricolored backpack of orange, white, and dark gray or blue.

At approximately 2:25 p.m., Nealy entered the Capitol on the first floor through the Senate Wing Door, about 12 minutes after it was initially breached. When Nealy entered, the windows had been broken, the door had been forced open, and rioters were entering the Capitol building through the door and windows as alarms blared. Nealy turned right and walked down the corridor towards the Capitol Crypt East. (*See* Images 1 and 2, with Nealy circled in red.)



**Image 1**



**Image 2**

Nealy then walked around the Crypt East. (*See* Image 3.)



**Image 3**

Nealy left the Crypt East area, and at approximately 2:29 p.m., was in the Crypt Lobby

East on the first floor. (*See* Image 4.)



**Image 4**

Nealy was then observed in the first-floor Elevator Lobby at approximately 2:34 p.m. (*See*

Image 5.)



**Image 5**

Nealy exited the U.S. Capitol building at the direction of law enforcement through the Senate Wing door at approximately 2:38 p.m., after having been inside the building for approximately 13 minutes. (*See* Image 6.)



**Image 6**

*Nealy's Interview*

On April 28, 2022, Agents conducted an in-person interview with Nealy at his residence in Shippensburg, Pennsylvania. During the interview, Nealy stated that he did enter the Capitol from what Nealy believed to be the back side mezzanine level near scaffolding. Upon entering the building, he went to the right and entered a room with statues along the wall. Nealy stated that while inside he used the bathroom. Upon exiting the bathroom, Nealy spoke with law enforcement who told him it was time to leave. Nealy stated he then exited the building willingly.

*The Charges and Plea Agreement*

On June 8, 2023, the United States charged Nealy by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On June 13, 2023, law enforcement officers arrested him in Pennsylvania. On August 16, 2023, the United States charged Nealy by a one-count Information with violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings). On September 1, 2023, pursuant to a plea agreement,

Nealy pleaded guilty to Count One of the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Nealy now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of incarceration and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Nealy's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Nealy, the absence of violent or destructive acts is not a mitigating factor. Had Nealy engaged in such conduct, he would have faced additional criminal charges.

Nealy entered the Capitol building through the Senate Wing Door, 12 minutes after it was first breached, in the thick of the riot. While he did not wear tactical gear or engage in violence, the true strength of the rioters was in the mob's sheer numbers, and he added to that power. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 14 days of incarceration in this matter.

### B.  Nealy's History and Characteristics

As set forth in the PSR, Nealy was previously convicted of involuntary manslaughter in 2013 as a result of his driving while drunk. He was sentenced to 36 months' probation, which he completed early. However, it appears he still has not fully embraced a law-abiding life.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Nealy must be deterred from future criminal activity, including any activity similar to that of January 6, 2021. Nealy must understand that his presence contributed to the chaos, destruction, and violence that occurred that day. Accordingly, a sentence must be imposed that would deter him from similar acts or other criminal acts in the future.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Court must sentence Nealy based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Nealy has pleaded guilty to Count One of the Information, charging him with violating 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who entered the U.S Capitol building to periods of incarceration similar that requested by the government in this case.

In *United States v. Lattanzi*, 22-cr-28 (TSC), this Court imposed a sentence of 14 days' incarceration where the defendant entered the Capitol at 3:22 p.m., remained in the Capitol for 5 minutes, and left when an officer told him to. The defendant lied to the FBI when they first approached him, but then came clean through his lawyer the next day. While Nealy did not appear to lie to the FBI, he similarly entered the Capitol soon after the initial breach and chose to remain inside despite the surrounding chaos.

In *United States v. Derek Sulenta,* 22-cr-340 (TSC), this Court sentenced the defendant to 14 days' incarceration where he spent 47 minutes inside the Capitol building and bragged on social media that day about "breach[ing] the capital (sic) building" and called the events "wild." Nealy

did not remain inside the building as long as Sulenta did, nor did he brag on social media, but like Sulenta, Nealy chose to remain inside the Capitol building despite the obvious chaos, violence, and destruction going on that day.

In *United States v. Edward Hemenway*, 21-cr-49 (TSC), this Court sentenced to 45 days' imprisonment defendants who saw fighting in the crypt, chanted "our house" and "stop the steal," and took photos while inside the Capitol. This Court's sentence was driven in part by serious criminal history, which Nealy also has given his prior conviction for involuntary manslaughter.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Nealy must pay $500 in restitution, which reflects in part the role Nealy played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Nealy's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

**VI.       Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Nealy to 14 days of incarceration and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Nealy's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ *Joseph Huynh*
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270